No. 48,326

STATE OF KANSAS, *Appellee*, v. ROBERT C. HORNBEAK a/k/a ROBERT C. BARKER, *Appellant*.

(559 P. 2d 385)

Opinion filed January 22, 1977.

*Richard M. Klinge,* of Kaplan & McMillan, of Wichita, argued the cause and was on the brief for the appellant.

*Christopher Randall,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, *Stephen E. Robison,* assistant district attorney, and *James Greason,* legal intern, were with him on the brief for the appelee.

The opinion of the court was delivered by

MILLER, J.: Robert C. Hornbeak was convicted by a jury of aggravated robbery in violation of K. S. A. 21-3427 in the district court of Sedgwick County, Kansas, on July 16, 1975, and was sentenced to imprisonment for not less than 10 years nor more than life, in accordance with K. S. A. 21-4501 (*b*). He appeals, citing as error the denial of his motion for a transcript of the preliminary hearing, the withholding of favorable evidence by the prosecution, the receipt in evidence of a "mug shot," and the receipt in evidence of identification testimony based upon suggestive photographic and lineup identification. He also claims that the evidence was not sufficient to show that he was at the scene of the robbery.

The Carl Bell Market at 13th and St. Francis in the city of Wichita, Kansas, was robbed by four armed men on March 14, 1975. The manager testified that he was behind the meat counter when the four entered the store. He identified the defendant as the robber who pointed a small hand gun at him during the robbery. Defendant was also identified by a customer who had been sitting outside in a parked car when the four robbers entered the market.

The defendant claims that it was error for the trial court to deny his motion for a transcript of the preliminary examination for his use during trial. John D. Clark, of the Wichita bar, was

appointed to represent the defendant, and appeared for him during the preliminary examination and the subsequent trial. An information was filed in the district court on May 22, 1975. On June 13, defendant filed a motion for an order providing him with a transcript of the preliminary hearing "to assist this defendant during the trial of this matter." Apparently the motion was submitted without argument and was denied by order entered June 20, 1975. Trial commenced on July 14, 1975, forty-five days after the preliminary hearing.

The defendant places primary reliance on the case of *Britt v. North Carolina*, 404 U. S. 226, 30 L. Ed. 2d 400, 92 S. Ct. 431 (1971). That case involved the failure of the state to provide an indigent defendant with a free transcript of the first jury trial, which ended in a mistrial. The second trial was conducted the following month before the same judge, with the same counsel, and the same court reporter. Counsel acknowledged on oral argument that the trial occurred in a small town; the lawyers and the court reporter were good friends; the reporter would at any time have read back to counsel his notes on the mistrial, well in advance of the second trial, if counsel had simply made an informal request. The court concluded that petitioner had available an informal alternative which appears to be substantially equivalent to a transcript. The court observed, however, that *Griffin v. Illinois*, 351 U. S. 12, 100 L. Ed. 891, 76 S. Ct. 585, requires a state, as a matter of equal protection, to provide indigent prisoners with the basic tools of an adequate defense, when those tools are available for a price to other prisoners, and that the state must provide an indigent defendant with a transcript of prior proceedings when the transcript is needed for an effective defense. Two factors are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript. The opinion points out that the court below rested its decision not upon "particularized need," but instead upon the second factor, the availability of adequate alternatives to a transcript.

We discussed *Britt* at length in *State v. Kelley*, 209 Kan. 699, 702, 703, 498 P. 2d 87. We held that in the light of *Britt*, it is proper for a trial court, in making its determination of necessity for a transcript of a prior proceeding, to consider the availability of alternative devices that would fulfill the same functions as a

transcript. *Kelley* was represented by the same counsel at preliminary examination and at trial. Full access to the reporter's notes was available when needed. We held that this constituted a fair and adequate alternative, and that the trial court did not err in denying the motion for a free transcript.

Again in *State v. Julian,* 212 Kan. 169, 509 P. 2d 1123, error was alleged in the denial of a free transcript. Less than one month had elapsed between the preliminary hearing and the trial. Julian was represented in both actions by the same attorney. The defense failed to call the court reporter as a witness, to read his notes of the preliminary hearing, as suggested by the trial judge. We said:

". . . [T]here is no absolute right to a transcript. The necessity for a transcript can be determined in the light of the availability of alternative devices which could fulfill the functions of a transcript. . . ."

We held that an adequate alternative was available and thus the trial court did not err in denying the request. We dealt with similar problems in *State v. McVeigh,* 213 Kan. 432, 516 P. 2d 918; *State v. Greene,* 214 Kan. 78, 519 P. 2d 651; and *State v. Wheeler,* 215 Kan. 94, 523 P. 2d 722.

Similarly, a claim of denial of equal protection for failure to provide a free copy of the transcript of the first trial was raised in *State v. Jordan,* 220 Kan. 110, 551 P. 2d 773. The second *Jordan* trial was conducted before the same judge, with the same counsel and court reporter, forty-five days after the first trial. The court reporter was available during the entire second trial and could have made portions of the first transcript available prior to trial if a request had been made by the defendant. We again noted that the trial court "may consider the availability of alternative devices that would fulfill the same functions as a transcript. . . . An indigent defendant in a criminal proceeding on proper showing of need is entitled to have a transcript of portions of previous trial proceedings prepared at state expense, subject however to a determination by the trial court that such transcript is necessary for the indigent to present his defense adequately." (p. 113.) We noted that the reporter was generally available for consultation before and during trial and observed that the defendant made no showing that he was surprised or unduly hampered in conducting his defense at the second trial because of the absence of the transcript of the first. Under the circumstances disclosed, we found no abuse of discretion on the part of the trial court in denying the motion for a free transcript.

*Britt,* it seems to us, does not require the state to furnish every defendant with a complete transcript of all prior proceedings, whether preliminary examination or trial, upon request. The state must provide a transcript only when it is needed for an effective defense, and when reasonably efficacious alternative devices are not available.

In the case at hand the defendant had the same counsel at both the preliminary examination and the trial; only a short time elapsed between hearings; the court reporter was available, was called to testify, and read from her notes of the preliminary hearing.

The testimony with which we are concerned is that of Mr. Whitt, a prosecution witness. He was seated in an automobile, parked in the parking stall nearest the door through which the robbers entered the market. He made no identification on the date of the robbery, but approximately one week later he was shown five or six pictures by an officer from the Tulsa Police Department. He testified on direct examination that he identified two of the pictures as photographs of two of the men, one being the defendant. He remembered later that they were the ones he saw go into the store. He stated that his in-court identification did not depend upon the photographs.

His testimony at the preliminary examination was similar, to the effect that he had identified two of the men, including defendant Hornbeak, from the photographs. He did say, however, that when he first looked at the picture of defendant Hornbeak, he stated that he had seen him somewhere but he could not place him. He recognized him, and knew that he had seen him somewhere before.

The witness was cross-examined as to his prior testimony, and his earlier testimony was read to the jury by the court reporter. It thus appears that the defendant had everything he would have had with a transcript. Under the circumstances, the defendant had an effective alternative which was substantially equivalent to a transcript. We conclude that the trial court did not err in denying the motion.

Before we leave this matter, however, we think it well to fix guidelines for the court and counsel with regard to the furnishing of transcripts of preliminary examinations. Our statute, K. S. A. 22-2904, provides that the examining magistrate may cause the record of a preliminary examination to be made, and he should do so when a request is made by either the prosecuting attorney or by the defendant or his counsel. This statute requires the taking

of a record, either by a court reporter or by electronic means (see rules relating to court reporters, No. 360, *et seq.,* effective January 10, 1977) but it does not specifically provide for the transcription and distribution of a *transcript* from that record.

K. S. A. 22-4509, as amended by section 25 of chapter 163 of the Laws of 1976, relates only to transcripts necessary for the purposes of an appeal or other post-conviction remedy, and is here inapplicable.

K. S. A. 22-4507, as amended by section 111 of chapter 145 of the Laws of 1976, provides for the reimbursement of expenses reasonably incurred by an attorney appointed for an indigent, and thus provides a method whereby the indigent may secure a transcript of a preliminary proceeding or an earlier trial, when such transcript is needed for use at trial.

Appointed counsel should secure the approval of the trial judge in accordance with the rules of the board of supervisors of panels to aid indigent defendants. The application for a transcript need not detail the uses to which the transcript may be put, but the applicant should make known to the trial court, either in the motion or orally at the time the motion is heard, the primary reason why a transcript is requested. In the usual case where identity is challenged, for example, the motion should so state, and upon such a showing a transcript should be provided.

In those instances where the state secures a transcript, the original should be filed with the clerk of the court, thus making the transcript available to defense counsel. Where a request is made and initially denied, defense counsel has an obligation to renew the request upon discovery of additional information which would justify the request.

Defendant next contends that the state violated the *Brady* rule (see *Brady v. Maryland,* 373 U. S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and *State v. Kelly,* 216 Kan. 31, 34, 531 P. 2d 60), in that the state failed to give the defendant a photograph which was taken by Wichita police on March 19, 1975, when Hornbeak was arrested for an offense not here involved. Defendant contends that this photograph would be exculpatory because it would show that he had a moustache and a goatee, and that this would be in direct contradiction of one of the witness' testimony that the defendant was clean shaven at the time of the robbery. The photograph would be exculpatory only if it revealed that at the time it was taken, approximately five days after the robbery, the defendant had such

a long growth of facial hair that it could not have been grown in five days.

The evidence which the state withheld in *Brady* was *not known* to the defendant. His attorney had asked the prosecution to allow him to examine *all* statements given by a co-defendant, Boblit. Several were produced; one was withheld. It contained evidence critical to Brady's defense. Brady did not know of that statement until after he had been tried, convicted, and sentenced, and after his conviction was affirmed. *Brady v. Maryland,* supra, p. 84.

As is stated in *United States v. Natale,* 526 F. 2d 1160 (2nd Cir. 1976):

" 'The heart of the holding in *Brady* is the prosecution's suppression of evidence' favorable to the accused. *Moore v. Illinois,* 408 U. S. 786, 794, 92 S. Ct. 2562, 2568, 33 L. Ed. 2d 706 (1972). The concept of 'suppression' implies that the Government has information in its possession *of which the defendant lacks knowledge* and which the defendant would benefit from knowing. . . ." (Emphasis supplied.) (pp. 1170, 1171.)

Similarly, in *United States v. DeMarco,* 407 F. Supp. 107 (C. D. California 1975), that court said:

". . . The very purpose of *Brady* was to make clear that the due process clause compels the production of material *not otherwise discoverable.*" (Emphasis supplied.) (Footnote 2, p. 111.)

Also, the suppression or withholding of mere *cumulative* evidence is not violative of the rule; the evidence must be sufficiently material on the ultimate question of guilt or innocence to have played a determinative role in the outcome of the trial. *United States v. Crow Dog,* 532 F. 2d 1182, 1192 (8th Cir. 1976).

Hornbeak knew of the "mug shot," yet he made no request for its production during the trial. The first mention of that photograph came with the motion for a new trial. Where a defendant is aware of the existence of evidence and fails to request its production during trial, the prosecution cannot be said to have "suppressed" that evidence. Further, two lineup photographs of the defendant were taken about the same time as the "mug shot." Both of these were in evidence and before the jury. Both showed the defendant to have some facial hair. The "mug shot," therefore, would have been mere cumulative evidence. For these reasons we hold that no error is shown.

Defendant next contends that the trial court erred in receiving into evidence state's exhibit No. 1, a "mug shot," because the legend printed thereon carries the obvious implication that the defendant

was either arrested or convicted of a crime prior to the robbery here involved. The exhibit was admitted into evidence without objection. The matter was not raised in the motion for a new trial, nor was this issue ever presented to the trial court. K. S. A. 60-404, frequently referred to as our contemporaneous objection rule, provides that a judgment shall not be reversed because of the erroneous admission of evidence unless there appears of record a specific objection to the evidence timely interposed. *State v. Estes*, 216 Kan. 382, 532 P. 2d 1283; *State v. Holloway*, 219 Kan. 245, 547 P. 2d 741. Further, an issue presented for the first time on appeal will not be considered by this court. *Churchill v. State*, 216 Kan. 399, 532 P. 2d 1070.

Defendant's next claim of error relates to identification testimony. He contends that it was error for the trial court to allow witnesses to make an in-court identification after they had been subjected to prior photographic and lineup procedures which were impermissibly suggestive. The record is devoid of any objection on this ground to the testimony of the witnesses at trial, and it contains no motions to suppress the testimony. The matter was not raised in the motion for new trial, nor was it otherwise presented to the trial court. Defendant's failure to object, to move to suppress, or to otherwise present this issue to the trial court precludes review, as provided by K. S. A. 60-404, previously discussed. And see *Cook v. State*, 220 Kan. 223, 552 P. 2d 985.

Finally, Hornbeak contends that the evidence was insufficient to show that he was at the scene of the robbery, and thus to support his conviction. Two witnesses identified him as one of the robbers, and placed him at the scene of the crime. We have held that it is sufficient evidence for the victim alone to testify as to the identity and presence of the defendant. *State v. Greer*, 202 Kan. 212, 215, 447 P. 2d 837. As we have frequently stated, the issue on appeal is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence is sufficient to form a basis for a reasonable inference of guilt when viewed in the light most favorable to the state. *State v. Beard*, 220 Kan. 580, 552 P. 2d 900; *State v. Jackson*, 220 Kan. 675, 556 P. 2d 885.

The judgment is affirmed.